### 22577. PIEDMONT SAVINGS COMPANY *v.* ATLANTA TITLE & TRUST COMPANY.

128

DECIDED JUNE 16, 1933.

130

*Madison Richardson,* for plaintiff.

*Tye, Thomson & Tye,* for defendant.

GUERRY, J. (After stating the foregoing facts.) The first ruling alone needs elaboration. Does the fact that negotiations between the Hollemans to buy and Mrs. Hanson to sell the apartment and take a security deed therefor and further negotiations between Mrs. Hanson and the Woolford Realty Company had been entered into with reference to buying the notes in the event of the closing of the trade between the Hollemans and Mrs. Hanson amount to such a completed contract as that the Woolford Realty Company had no further interest therein except to see that the title to the property was in good shape and the transfer of the notes was in regular form? We think not. The trade was not closed. The very fact that the Woolford Realty Company employed the defendant "to act for it *in closing the trade,*" and the defendant accepted such employment, precludes a legal conclusion that the trade had already been closed at the time of employment of the defendant company. The Woolford Realty Company, instead of closing this trade itself, employed the defendant company because of its supposed greater knowledge and skill in handling such matters, and turned over to it the money with full authority to act for the Woolford Realty Company and in its behalf. This trust reposed carried with it a corresponding obligation on the part of the defendant to represent the interest of the Woolford Realty Company. That company expected to pay, according to the allegations, $10,-000 for sixty $200 notes. It did not expect to pay $10,739.40 for them. The defendant knew or should have known what was the effect of the provision it inserted in the deed from the Hollemans to Mrs. Hanson. Can it be said that if five years' back taxes, instead of one year's taxes as in the present case, had been included in the agreement between Mrs. Hanson and the Hollemans,

there would have been no duty or obligation on the part of the defendant to notify its principal of such terms before paying out the money intrusted to it? The defendant may not have been employed to negotiate a contract of purchase, but the defendant was employed, on account of its skill, to close a trade whereby the plaintiff was to expend $10,000, which trade had been started by the plaintiff but had not been finished. In accepting such employment and undertaking such a trust it was the duty of the defendant to bring to bear, for the benefit of its employer, all the skill and knowledge it possessed. Its function was not merely ministerial, because the expression "employed to close the trade" did not take away from the defendant all power of judgment and discretion, but in effect gave to it the power to reject entirely in the event its terms should appear to be detrimental to the interest of its client. Certainly, if the defendant brought to its functions no degree of skill, or failed to exercise the skill it had and failed to ask for instructions or directions when it was apparent that its client would suffer loss, it can not be said that no liability exists therein because its acts were merely ministerial. When the Woolford Realty Company instrusted the defendant with $10,000 it impliedly said to it, under the allegations of the petition, "I am buying or agreeing to buy 60 notes for $200, maturing one a month for 60 months. They are secured by certain real estate. I am paying $10,000 for these notes. You see that the title to the real estate is all right, and you further represent me in closing this trade,—that is, see that I get $12,000 in notes that are valid and enforceable at all events for that amount." This the defendant failed to do. The plaintiff received only notes of the value of $12,000 less the set-off of $739.40.

As one occupying a relation calling for the utmost good faith in all matters affecting the subject matter of his agency, the defendant failed, according to the allegations of the petition, so to do; and it was error for the trial judge to sustain the demurrer and dismiss the petition.

The court did not err, for any of the reasons assigned, in overruling the demurrer to the answer.

*Judgment reversed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. In my opinion the petition failed to set out a cause of action, and was properly dismissed on demurrer.